**ADVANCED SURGICAL TECHNOLO-GIES, INC., a Delaware corporation, Plaintiff-Appellant/Cross-Appellee.**

v.

**AUTOMATED INSTRUMENTS, INC., now known as Integrated Devices, Inc., a Florida corporation and Sheldon Berkowitz, Defendants-Appellees/Cross-Appellant.**

No. 84–5422.

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1985.

Pryor, Cashman, Sherman & Flynn, New York City, Lewis N. Brown, Gilbride, Heller & Brown, P.A., Miami, Fla., Gideon Cashman, New York City, for plaintiff-appellant/cross-appellee.

Jerome Shevin, Sparber, Shevin, Rosen, Shapo & Heilbronner, Marsha C. Rosen, Miami, Fla., for defendants-appellees/cross-appellant.

Before TJOFLAT and HENDERSON, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

PER CURIAM:

This appeal concerns the district court's finding of theft as defined by Fla.Stat. § 812.014 (1983) and trebling of damages pursuant to Fla.Stat. § 812.035(7) (Supp. 1984). We hold that the statutory scheme in question does not contemplate raising an ordinary breach of contract, which is what occurred in this case, to the level of theft and that therefore treble damages were inappropriately awarded.

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The two lasers involved in this suit were model 733 Sharplan Lasers, highly sophisticated pieces of surgical equipment designed to remove vaporized tissue from patients and seal small blood vessels.

I.

Advanced Surgical Technologies, Inc. (Advanced) is a corporation organized and existing under the laws of Delaware with its principal place of business in Schaumburg, Illinois. It is the sole marketing entity in the United States of Laser Industries, an Israeli corporation that manufactures the Sharplan Laser.[1] Automated Instruments, Inc. (Automated) is a Florida corporation with its principle place of business in Dade County, Florida. Automated was Advanced's exclusive distributor for the Sharplan Laser in Florida. Under the distributorship agreement, Automated purchased the lasers from Advanced and sold them for a profit.

During the latter part of 1980, Automated began negotiations with Advanced to end the distributorship relationship. At the time, Automated had two lasers in its inventory. On January 22, 1981, the parties entered into a formal contract terminating Automated's distributorship. The contract provided that Advanced would sell Automated's two lasers for $47,850.00 each before it sold any other Sharplan Lasers in Florida. The purchaser of the first laser would make payment directly to Automated, which in turn would forward $10,850.00 to Advanced. The purchaser of the second laser would make payment to Advanced, and Advanced would send $35,100.00 to Automated.

Advanced sold the first laser, but contrary to the provision in the contract the purchaser paid Advanced rather than Automated. Advanced never paid Automated the $37,000.00 it was due under the contract. Advanced breached the contract again when it sold numerous Sharplan lasers in Florida without selling Automated's second laser.[2] Advanced did tender Automated a check for $30,175.75 after selling a

2. We cannot determine from the record who held title to this second laser when the case came to trial in the district court. The identity of the title holder, however, is unimportant, because Advanced does not contest the district court's finding that it breached its contract with Automated and that Automated incurred $72,-100.00 in damages. *See infra* note 3.

second laser (not Automated's second laser) in Florida, but Automated refused to accept it because the amount was less than the $35,100.00 due under the contract. Advanced tendered the lesser amount because it claimed Automated owed it $4,924.25 for parts and equipment it had purchased from Advanced.

Automated thereafter sued Advanced in state court for damages it had sustained as the result of Advanced's breaches of their contract terminating the distributorship. Advanced promptly removed the action to the United States District Court for the Southern District of Florida and filed a counterclaim for the $4,924.25 Automated allegedly owed it. After a non-jury trial, the district judge concluded that Advanced had breached its contract with Automated and that Automated had incurred $72,-100.00 in damages.[3] The district judge also concluded that Advanced's actions amounted to theft under Fla.Stat. § 812.014 (1983)[4] and trebled the damages pursuant to Fla.Stat. § 812.035(7) (Supp.1984).[5] The court further found that Advanced had maliciously converted Automated's property and stated that had it not awarded Automated treble damages it would have awarded it substantial punitive damages.[6] The court rejected Automated's claim that Advanced's conduct amounted to fraud because it was not shown that Advanced entered into the agreement with the intent to deceive Automated and not to perform under the contract. Finally, the court found against Advanced on its counterclaim, concluding that it failed to sustain its burden of proof.

Advanced appeals from the court's conclusion that its conduct in breaching the contract with Automated amounted to theft under section 812.014 and rendered it liable for treble damages. Automated cross appeals the court's determination that Advanced's conduct did not amount to fraud. Because we do not consider Advanced's conduct to constitute theft under section 812.014, or to amount to a conversion, we set aside the district court's treble damages award and award Automated only compensatory damages for Advanced's breach of contract.[7]

## II.

The rule of decision in a diversity action is provided by state law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Here, Florida law controls. There is no question that Advanced breached its contract with Automated. The main issue before us is whether Advanced's conduct also amounted to theft as defined by section 812.014.

■ Without holding that conduct amounting to a breach of contract can never constitute theft, we conclude that on the

---

3. The court attributed $37,000.00 of this amount to the sale of Automated's first laser and $35,-100.00 to the contractually required sale of its second laser. In addition, the court awarded prejudgment and postjudgment interest on these amounts.

4. Section 812.014(1) provides:
   812.014. Theft.—
   (1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
   (a) Deprive the other person of a right to the property or a benefit therefrom.
   (b) Appropriate the property to his own use or to the use of any person not entitled thereto.

5. Section 812.035(7) provides:
   812.035. Civil remedies; limitation on civil and criminal actions.—
   . . . .

   (7) Any person who is injured in any fashion by reason of any violation of the provisions of ss. 812.012–812.037 has a cause of action for three-fold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200. Such person shall also recover court costs and reasonable attorneys' fees in the trial and appellate courts.

6. In addition, the court awarded Automated an attorney's fee apparently pursuant to section 812.035(7).

7. After careful examination of the record, we reject Automated's contention that the district court's failure to find that Advanced acted fraudulently was erroneous.

facts of this case Advanced did not violate section 812.014. Automated's claim to any proceeds generated by the sale of the lasers arose from its contract with Advanced. Advanced's failure to abide by that contract constituted a breach entitling Automated to compensatory damages; it did not constitute theft.

Automated cites no case holding that a simple breach of contract is the equivalent of theft under section 812.014. In fact, *American International Realty, Inc. v. Southeast First National Bank*, 468 So.2d 383 (Fla.Dist.Ct.App.1985), holds to the contrary. There, a bank customer wrote a check on an account in which there were insufficient funds, thereby creating an overdraft. The bank, pursuant to its contract with the customer, made payment on the check. The customer, in breach of the contract, refused to cover the overdraft, and the bank brought suit. The trial court found that the customer's action violated section 812.014 and awarded treble damages. The district court of appeal reversed, holding that the bank was entitled only to damages for breach of contract. We interpret this case as an indication that section 812.014 does not apply to ordinary breaches of contract such as those involved in the present case.[8] Accordingly, we hold that Advanced did not violate section 812.014; therefore, the court should not have trebled Automated's damages.[9]

The trial judge also found that Advanced converted Automated's property and stated that had he not trebled the damages he would have imposed punitive damages. Florida courts define conversion as "an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it." *Belford Trucking*

Co. v. Zagar, 243 So.2d 646, 648 (Fla.Dist.Ct.App.1970). As we have said, we view the facts of this case as establishing an ordinary breach of contract. Without holding that a breach of contract could never give rise to a conversion of property claim, we find that Advanced's actions in this case did not constitute a conversion of Automated's property. Advanced did have possession of monies which were generated from the sales of the two lasers,[10] and under the contract it owed a portion of such proceeds to Automated. However, "a mere obligation to pay money, generally, may not be enforced by a conversion action." *Douglas v. Braman Porsche Audi, Inc.*, 451 So.2d 1038, 1039 (Fla.Dist.Ct.App.1984); *see also Belford Trucking Co. v. Zagar*, 243 So.2d at 649. We consequently find that the district court erred in concluding that Advanced had converted Automated's property.

### III.

We accordingly reverse the district court's trebling of damages. We affirm Automated's award of $72,100.00 in compensatory damages the district court accorded it as a result of Advanced's breach of contract, along with the prejudgment and postjudgment interest and costs as provided by the district court's judgment. On receipt of our mandate, the district court shall amend its judgment accordingly. Finally, we affirm the district court's conclusion that Automated did not make out a claim of fraud and deceit against Advanced.

AFFIRMED in part and REVERSED in part, with directions.

---

**8.** We note that trebling Automated's damages in this case would have an anomalous result. Advanced tendered to Automated a check for $30,175.75 as payment for Automated's second laser. It is true that this was less than the amount the contract specified. In finding that Advanced committed theft, however, the district court trebled not only the additional $4,924.25 Advanced should have tendered but also the $30,175.75 it did tender.

**9.** The district court apparently relied on section 812.035(7) in awarding Automated an attorney's fee. As we hold section 812.035(7) inapplicable to the facts of this case, it follows that the court's award of the attorney's fee must be set aside.

**10.** Under Florida law, money may be converted "so long as it consists of specific money capable of identification." *Belford Trucking Co. v. Zagar*, 243 So.2d at 648.