ROSENTHAL TOYOTA, INC.,
Plaintiff-Appellee,
Cross-Appellant,

v.

Jay M. THORPE, Defendant-Appellant,
Cross-Appellee,

and

Gold Key Leasing, Inc., a Florida Corporation, John M. Mannone, John F. Troy, Defendants.

No. 86–3538.

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1987.

Richard M. Georges, St. Petersburg, Fla., for defendant-appellant/cross-appellee.

Mark B. Shorr, Becker, Poliakoff & Streitfield, Fort Lauderdale, Fla., for plaintiff-appellee/cross-appellant.

Before JOHNSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

As a result of a car selling plan gone awry, Rosenthal Toyota, Inc. sued Jay M. Thorpe, among others, for conversion, civil theft and civil conspiracy. A jury found Thorpe liable on all counts and awarded Rosenthal Toyota compensatory damages of $77,084.11, including prejudgment interest, and punitive damages of $50,000. After the district court trebled the compensatory damage award pursuant to Fla.Stat. § 812.035(7), the court refused also to award punitive damages. Thorpe appeals the jury's guilty verdict, and Rosenthal Toyota cross-appeals the elimination of the punitive damage award.

## I. FACTS

This lawsuit arises out of the complex car allocation system among Toyota dealerships. In the early 1980's, Toyota Motor Sales, parent company for Toyotas in the United States, allotted its cars among twelve regional distributors based on the dealer sales within the region. The distributors could then allocate the cars among the dealers however they pleased, usually based on the dealers' sales. While attempting to increase his sales and thereby get more cars, a car dealer might sell a Toyota to a car broker rather than an ultimate consumer. Another dealer, who received the car from the broker, might eventually sell the car to a consumer. If this se-

quence of events occurred and the regional distributor found out about it, the vehicle would be "rolled back"; the original selling dealer would lose credit for the sale, and the dealer who made the sale to the consumer would receive credit. Consequently, the regional distributor would allocate the original selling dealer fewer cars than the dealer who eventually sold the car to the consumer. Some distributors, such as Southeast Toyota Distributors, would even penalize the original dealer two cars for every one rolled back on him.

In June 1980, John M. Mannone and John F. Troy formed the Florida corporation, Gold Key Leasing, Inc. (Gold Key), to lease a fleet of cars. They were unsuccessful in the leasing business, so they entered the car brokering business. Gold Key would purchase cars from dealers, including Toyota dealers, and promise not to resell the cars for six months, thereby insuring there was no rollback for the selling dealer. Gold Key, however, did not always honor this promise. Often Gold Key would sell the cars to other dealers and extract a promise from the dealers that they would not report to Toyota Motor Sales the consumer sales of these brokered cars.

In August 1981, Gold Key sold four cars and four trucks to Rosenthal Toyota, Inc., a Maryland dealership. A month later John Troy of Gold Key approached David Perno, the General Manager of Rosenthal Toyota, and offered to sell him four Toyota Supras at the cost per car of the first purchase: $1000 over dealer cost, plus Rosenthal Toyota paying the freight of $200 to $300. Thus, Gold Key would have a profit of $1000 per car. Perno was at first receptive to the offer, but after he learned that the Supras contained a lot of extras and were very expensive, he declined the deal.

On November 18, Willett Toyota, another dealer that dealt with Gold Key, received word that its regional distributor was going to rollback a vehicle Willett Toyota had sold to Gold Key on August 31, 1981. The letter informing Willett Toyota of the rollback did not identify the ultimate selling dealer. The serial number, however, identified it as a car Gold Key had sold to Rosenthal Toyota in August.

When the first of December arrived, Troy still wanted to sell Rosenthal Toyota the four Supras. He spoke to Perno and offered to reduce the cost of each car to $700 over cost, plus Gold Key was willing to pay the freight. In order to close the deal, Gold Key would cut its profit from $1000 to $500. Rosenthal Toyota accepted the new terms and sent Gold Key a certified check for $53,681.80 on December 2, 1981.

Troy received the funds at his home on December 3, 1981. Earlier that same day, Troy testified that Willett Toyota and a St. Petersburg Toyota dealer had called him to inform him of rollbacks of cars the dealers had sold to Gold Key. Some of the cars rolled back were identified as ones sold to Rosenthal Toyota. After Mannone arrived at Troy's house, the two of them went to Jay M. Thorpe's office to discuss the matter. Thorpe was Gold Key's attorney and Mannone's personal attorney. According to Thorpe, the three of them decided that Gold Key would hold on to the cars sold to Rosenthal Toyota to see if Rosenthal Toyota could straighten out the rollback problem.

In any event, Thorpe deposited Rosenthal Toyota's certified check in his trust account. Thorpe, Troy and Mannone had a variety of explanations for the deposit. Thorpe testified that Troy and Mannone wanted the check cleared that day, and their bank was farther away than Thorpe's. Troy disputed this reason and stated that they deposited the check in Thorpe's account because they did not want to be responsible for the money. According to Troy, all the money except for Gold Key's $500 profit on each car belonged to Rosenthal Toyota. Mannone testified that Thorpe advised them to deposit the check in his trust account as "a tactical ploy" to get it negotiated as soon as possible.

After Thorpe deposited the check in his trust account, he wrote a check on that account to Gold Key for $43,681.80, retaining $10,000 in his account for past and

future legal fees.[1] Thorpe's bank allowed him to write checks on funds deposited that very day, even on certified checks drawn on out of state banks. As to the legality of that disbursement, Thorpe testified that he advised Mannone or Troy that if they kept the money and cars they would not be guilty of a crime but only subject to a civil suit. Additionally, if Gold Key kept the money, Rosenthal Toyota would be forced to sue them in Florida instead of Gold Key having to initiate a lawsuit in Maryland as to the rollbacks.

To show that Gold Key planned to keep Rosenthal Toyota's money without ever delivering the cars, Rosenthal Toyota presented at trial the deposition testimony of a dispatcher from a freight company. The dispatcher explained a bill of lading that showed a shipper in Missouri picked up the four Supras sold to Rosenthal Toyota and delivered them to another car dealer in Philadelphia on December 5, 1981. The dispatcher testified that the order would have had to have been placed three to five days prior to December 5 to insure that a driver was in place to pick up the cars, thus leading to the inference that some time between November 30 and December 2, Gold Key ordered the cars delivered to a dealer other than Rosenthal Toyota. Troy denied the validity of the bill of lading, even though his signature was on it.

On December 7, Thorpe mailed a letter to Rosenthal Toyota that he had dictated on the 3rd or 4th of December. He informed Rosenthal Toyota that Gold Key had learned about the rollback of one of the vehicles earlier sold to them. Gold Key claimed that Rosenthal Toyota's reporting to the regional distributor about the ultimate sale of the brokered car was a breach of their contract. Furthermore, Gold Key had received Rosenthal Toyota's check but "said monies are being held by Gold Key pending your compliance with the letter," namely redoing the rollback of the vehicle. The letter did not mention the deposit or disbursement of the funds. The same day Thorpe mailed the letter, Rosenthal Toyo-

ta's check cleared the Maryland bank on which it was drawn.

Rosenthal Toyota received Thorpe's letter on December 9th or 10th. David Perno immediately called the distribution manager at Mid-Atlantic Toyota and asked if the rollback at issue could be reversed. Such a reversal was impossible.

Since Rosenthal Toyota was unsuccessful in rectifying its rollback problem or obtaining the return of its money, Rosenthal Toyota sued Troy, Mannone, Thorpe and Gold Key in federal district court in Florida under diversity jurisdiction. Rosenthal Toyota alleged that Gold Key, Mannone and Troy committed fraud, that Gold Key breached its contract, and that all the defendants committed conversion, civil theft, and conspiracy. Subsequently, Gold Key filed a counterclaim for breach of contract. After hearing all the evidence, the jury found in favor of Rosenthal Toyota on each count. The jury assessed the defendants $77,084.11 in compensatory damages, including pre-judgment interest. As for punitive damages, the jury directed Gold Key to pay $10,000.00, Thorpe $50,000.00 and Mannone and Troy each to pay $100,000.00. The jury ruled in favor of Gold Key on its counterclaim but only assessed compensatory damages of $300.00.

After reviewing the verdict, the court trebled Rosenthal Toyota's compensatory damage award pursuant to Fla.Stat. § 812.-035(7) but then declined also to award punitive damages. This appeal ensued.

## II. ISSUES

Although the facts are complicated, the issues in this appeal are straightforward. Thorpe alleges that there was insufficient evidence to find him guilty of civil theft, conversion, and civil conspiracy to commit conversion and theft. Furthermore, Thorpe contends that the district court erred by trebling the compensatory damages and that the court abused its discretion when formulating the jury instructions. On the cross-appeal, Rosenthal Toy-

---

1. Eventually Thorpe returned all but $1,950 to Gold Key. He kept the $1,950 for legal fees.

The rest of the $10,000 had been targeted to pay for anti-trust litigation which never developed.

ota charges that the district court improperly struck the punitive damage award from the jury verdict. We find that there was sufficient evidence to sustain the jury's verdict, and we affirm the district court on all the other issues.

## III. DISCUSSION

State law provides the rule of decision in a diversity action. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Here, Florida law controls.

### A. *Civil Theft*

Florida's civil theft statute provides the following:

A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:

(a) deprive the other person of a benefit therefrom

(b) appropriate the property to his own use or to the use of any person not entitled thereto.

Fla.Stat. § 812.014(1) (1985).

█ Thorpe alleges that he is not guilty of civil theft because the certified check was the property of his client, not the "property of another." Thorpe merely deposited his clients' funds. According to Thorpe, the record contains no independent evidence of criminal intent on his part to commit civil theft.

A defendant's mental intent, however, is hardly ever subject to direct proof, so a jury may find a defendant's criminal intent based on the surrounding circumstances of the case. *Brewer v. State*, 413 So.2d 1217, 1219–20 (Fla. 5th D.C.A. 1982). Here, Thorpe deposited Rosenthal Toyota's check in his trust account and then immediately disbursed the funds. Four days after the disbursement and on the same day Rosenthal Toyota's check cleared, Thorpe sent Rosenthal Toyota a letter notifying them of a rollback problem. In the letter, Thorpe

stated that Gold Key was holding the money until the rollback problem could be rectified. Rosenthal Toyota presented evidence that at the time of the disbursement, Gold Key never intended to deliver the cars to Rosenthal Toyota. The jury accepted Rosenthal Toyota's theory of the case and found that Thorpe had the criminal intent to commit theft. The jury could reasonably find that Thorpe disbursed Rosenthal Toyota's funds knowing that he and Gold Key had no right to the money, and then he refused to give the money back. *See Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157 (Fla.3d D.C.A. 1984). There was sufficient evidence to support the jury's finding.

The facts of this case are quite different from *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504 (11th Cir.1985), in which this court held that there was insufficient evidence to support a civil theft claim. In that case, Advanced Surgical Technologies, Inc. (Advanced) purchased lasers from Automated agreement. On January 22, 1981, the two parties entered a formal contract terminating the distributorship but also providing that Advanced would sell Automated's two Sharplan Lasers [2] for $47,850.00 each before it sold any other Sharplan Lasers in Florida. Advanced sold the first laser, but the purchaser paid Advanced, not Automated, in contravention of the terms of the contract. Advanced never paid Automated the $37,000 it was due under the contract. Thereafter, Advanced breached the contract again by failing to sell Automated's second laser before it sold numerous Sharplan lasers in Florida.

Eventually, Automated sued Advanced for damages in state court. Advanced promptly removed the case to federal district court. After a non-jury trial, the district court concluded, among other things, that Advanced's actions amounted to civil theft under Florida law. On appeal, the Eleventh Circuit determined that Advanced's failure to abide by its contract

---

**2.** Model 733 Sharplan Lasers are highly sophisticated pieces of surgical equipment designed to remove vaporized tissue from patients and to seal small blood vessels.

constituted a breach of contract claim, not a civil theft action. *Id.* at 1506–07.

Here, Gold Key and Thorpe accepted Rosenthal Toyota's money, even though they were not planning to deliver the Supras at issue. Gold Key and Thorpe did not simply breach the contract; they never planned to fulfill the terms of the contract and deliver the cars. They fraudulently used the offer of a contract as a ruse to obtain Rosenthal Toyota's funds. Thus, the jury's finding of civil theft was proper.

### B. *Conversion*

Thorpe contends that when Rosenthal Toyota voluntarily transferred possession of the check to Thorpe's client, Gold Key, Rosenthal Toyota terminated its right to possession of the funds. Consequently, Thorpe argues that he cannot be guilty of conversion because he was only depositing his client's check and disbursing his client's funds.

In Florida, a conversion is an unauthorized act which deprives another of his identifiable property permanently or for an indefinite time. *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157, 1160–61 (Fla. 3d D.C.A. 1984). "[T]he essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal." *Id.* at 1161. *See also National Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir.1985) (the essence of conversion under Florida law is the wrongful deprivation of the property). Money can be the subject of conversion if the specific money in question can be identified. *Allen v. Gordon*, 429 So.2d 369, 371 (Fla. 1st D.C.A.1983). Conversion can occur when money is disbursed without authorization. *Eagle v. Benefield-Chappell, Inc.*, 476 So.2d 716, 718 (Fla. 4th D.C.A. 1985). At the time Gold Key received Rosenthal Toyota's certified check, Gold Key

intended, as evidenced by the bill of lading, to deliver the cars promised to Rosenthal Toyota to another dealer. Because of Gold Key's scheme, Rosenthal Toyota had a right to immediate return of its money. Thorpe, upon receipt of the check, immediately disbursed the funds and misled Rosenthal Toyota in a letter about the status of the check. Together, Gold Key and Thorpe wrongfully deprived Rosenthal Toyota of its funds. Accordingly, there is sufficient evidence to support the jury's finding of conversion on the part of Thorpe.

### C. *Conspiracy*

Thorpe contends that Rosenthal Toyota presented no evidence of a conspiracy between him and his clients. Thorpe does not deny that on November 6 he met with Mannone and Troy at a cocktail lounge in Tampa. At trial, the three of them denied discussing Rosenthal Toyota or rollbacks at the meeting, but they did not testify as to what was discussed, other than saying it was "unrelated corporate matters." Additionally, Thorpe billed Gold Key $500 for office visits. Thorpe and his clients had an opportunity to discuss a conspiracy at these meetings. Thorpe's decision to deposit the certified check from Rosenthal Toyota in his trust account and immediately disburse the funds furthered the ends of the conspiracy. The jury here heard the testimony of all the witnesses and could logically infer from the evidence that Thorpe conspired with Gold Key to commit civil theft and conversion by depriving Rosenthal Toyota of its funds. "[T]he jury's verdict should not be disturbed if there is competent evidence in the record to support it." *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827 (11th Cir.1985).

### D. *Trebled Damages*

Under Florida law, damages for civil theft can only be trebled where there is no contractual relationship between the parties. *Rosen v. Marlin*, 486 So.2d 623, 624 (Fla. 3d D.C.A.1986) (interpreting Fla. Stat. § 812.035(7) (Supp.1984)).[3] There-

---

3. Fla.Stat. § 812.035(7) (Supp.1984), the statute discussed in *Rosen v. Marlin*, provides the following:

fore, Thorpe's clients, Mannone and Troy, who were in privity of contract with Rosenthal Toyota, are not liable for trebled damages, while Thorpe, their attorney, is liable. Thorpe argues that the privity of contract exemption from trebled damages should be extended to include the attorney who is advising one of the parties to the contract. Thorpe does not cite any case law in support of this position, and we do not find such an extension warranted.

### E.  *Jury Instructions*

Thorpe claims that the district court in three different instances abused its discretion when formulating the jury instructions. First, the district court refused to instruct the jury that an attorney acting under employment at the direction of his clients and in a legal manner is not liable for the consequences of his client's actions. *Pickard v. Maritime Holdings Corp.*, 161 So.2d 239, 241 (Fla. 3d D.C.A.1964); *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So.2d 949, 952 (Fla. 3d D.C.A. 1984).[4] The court also would not permit a special interrogatory based on this instruction.

■ A trial judge is given wide discretion as to the style and wording of jury instructions he may employ so long as his instructions reflect the pertinent substantive law. *Andres v. Roswell-Windsor Village Apts.*, 777 F.2d 670, 673 (11th Cir. 1985). In addition, he may refuse a requested instruction which is abstract or misleading. *Bryant v. Hall*, 238 F.2d 783,

789 (5th Cir.1956). Here, the court found that the requested instruction and interrogatory were more confusing than helpful because the instruction "assumes all the issues" by the use of the phrase "in a legal manner." Moreover, the court adequately explained what constituted illegal activity under each of the charges. An additional instruction stating that an attorney that acts legally will not be liable was unnecessary. Thus, the court did not abuse its discretion in refusing to give the requested charge.

■ Second, Thorpe alleges that the district court erred when defining conspiracy. The district court refused to give the following instruction requested by Thorpe:

A civil conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose not in itself criminal or unlawful, by criminal or unlawful means

.      .      .      .      .

Instead, the court instructed the jury as follows:

First, in determining whether a conspiracy existed, it is not necessary that the defendants made a formal agreement, or that they agreed on every detail of the conspiracy. But it is not enough that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find by a preponderance of the evidence that there was a joint plan to take Rosenthal Toyota's money without

(7) Any person who is injured in any fashion by reason of any violation of the provisions of §§ 812.012–812.037 or § 812.081 has a cause of action for threefold the actual damages sustained, and, in any such action, is entitled to minimum damages in the amount of $200. Such person shall also recover court costs and reasonable attorney's fees in the trial and appellate courts.

Since the commencement of this lawsuit, § 812.035(7) has been amended by 1986 Fla. Laws 86–277 to state the following:

The state, including any of its agencies, instrumentalities, subdivisions or municipalities, if it proves by clear and convincing evidence that it has been injured in any fashion by reason of any violation of the provisions of §§ 812.012–812.037 or § 812.081, has a cause

of action for three-fold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200 and shall also recover court costs and reasonable attorney's fees in the trial and appellate courts. In no event shall punitive damages be awarded under this section. The defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support.

The later version applies to all civil proceedings commenced on or after October 1, 1986, so it is not applicable in this case.

**4.** Both cases state the principle, but neither one requires the principle's inclusion in jury instructions.

providing automobiles in return, and that the defendants joined knowing of the improper plan and intending to carry it out.

While a conspiracy requires the participation have [sic] at least two persons, it is not necessary that all Defendants were involved in the conspiracy, and you need not find all Defendants joined in the conspiracy.

Second, if you find that the first element was proved, you must then decide whether a preponderance of the evidence shows some particular act, about which you are all in agreement, and that such act was carried out for the purpose of accomplishing the purpose of the conspiracy. This act does not have to be improper or unlawful by itself.

Thorpe claims that the court's instruction omitted an essential element of conspiracy, the "concerted action" requirement. We find that the court correctly stated the substance of the law and adequately covered the concept of "concerted action" in the instructions given. *See United States v. Solomon*, 686 F.2d 863, 876 (11th Cir.1982).

■ Third, Thorpe appeals the jury instruction on conversion. The district court instructed the jury that conversion required proof that the plaintiff was entitled to return of his funds, and that the defendants, or one or more of them, wrongfully deprived the plaintiff of the money. Thorpe admits that he did not object to the jury instruction at trial but claims that the instruction was plain error, so this court should reverse to prevent a miscarriage of justice. Thorpe's position is meritless. *See Andres v. Roswell-Windsor Village Apts*, 777 F.2d 670, 674 (11th Cir.1985) (appellant did not object to form of the charge, and Eleventh Circuit declined to reverse on alleged error not presented to the trial court).

### F. *Cross Appeal: Punitive Damages*

In its cross appeal, Rosenthal Toyota contends that the district court should not have struck the punitive damage award after trebling its compensatory damages. The court found the punitive damages to be "subsumed within the statutory trebling of plaintiff's damages" on the theft count. Rosenthal Toyota alleges that the district court's action was error because the punitive damages and trebled damages were awarded to punish for different wrongs. The punitive damages punished the defendants for their fraud, conversion, and conspiracy, while the trebled damages punished defendants for civil theft. Thus, Rosenthal Toyota distinguishes *Bill Terry's Inc. v. Atlantic Motor Sales*, 409 So.2d 507 (Fla. 1st D.C.A. 1982). In that case the court found that an award of both trebled damages and punitive damages for the same act amounted to double recovery or an excessive penalty. *Id.* at 509.

■ Here, the jury rendered a general verdict as to the civil theft, conversion, conspiracy, and fraud charges.[5] The jury

5. The jury verdict stated the following as to the civil theft, conversion, civil conspiracy and fraud charges:

2. Do you find from a preponderance of the evidence, as claimed by the Plaintiff, that the Defendants, and each of them, committed a civil theft of Rosenthal Toyota's property?

| Answer Yes or No as to each Defendant | |
| --- | --- |
| Gold Key Leasing | YES |
| John M. Mannone | YES |
| Jay M. Thorpe | YES |
| John F. Troy | YES |

3. Do you find from a preponderance of evidence, as claimed by the Plaintiff, that the Defendants, and each of them, wrongly converted (as defined in the Court's instructions) the money of Rosenthal Toyota?

| Answer Yes or No as to each Defendant | |
| --- | --- |
| Gold Key Leasing | YES |
| John M. Mannone | YES |
| Jay M. Thorpe | YES |
| John F. Troy | YES |

4. Do you find from a preponderance of the evidence, as claimed by the Plaintiff, that the Defendants, and each of them, entered into a conspiracy against the Plaintiff (as that term is defined in the Court's instructions) to commit a

then awarded the compensatory damages and punitive damages without specifying what theory formed the basis for the respective damage awards.[6] We cannot assume based on the verdict that the jury awarded punitive damages on every theory but civil theft, the basis for the treble damages. Therefore, we affirm the district court's refusal to award trebled compensatory damages and punitive damages under the same theory.

Furthermore, in *McArthur Dairy, Inc. v. Original Kielbs, Inc.,* 481 So.2d 535 (Fla. 3d D.C.A. 1986), a Florida District Court of Appeals held that punitive damages are duplicative of trebled damages for civil theft; consequently, in such a case punitive damages are no longer permitted. In reaching this conclusion, the court examined the following January 23, 1984 bill analysis prepared by the staff of the Committee on Criminal Justice of the Florida House of Representatives:

The appellate courts have generally frowned upon awards for trebled damages, plus punitive damages, upon the ground that trebled damages are punitive in nature already, and the combination of the two are necessarily duplicative as the punitive element, resulting in an excessive penalty.

*Id.* at 539.

■ Rosenthal Toyota is correct that the *McArthur Dairy* court construed a later version of the theft statute, Fla.Stat. § 812.035(7) (Supp.1984), which deleted any reference to the recovery of punitive damages in conjunction with trebled damages. The earlier version of the statute, Fla.Stat. § 812.035(7) (Supp.1983), provided that a person ... "has an action for three-fold the actual damages sustained, and when appropriate, punitive damages."

In *Senfeld v. Bank of Nova Scotia Trust Co.,* 450 So.2d 1157, 1165 (Fla. 3d D.C.A.

civil theft or to convert the funds of Rosenthal Toyota?

Answer Yes or No as
to each Defendant

Gold Key Leasing ___YES___

John M. Mannone ___YES___

Jay M. Thorpe ___YES___

John F. Troy ___YES___

5. Do you find from a preponderance of the evidence, as claimed by the Plaintiff, that the Defendants Gold Key Leasing, John M. Mannone and John F. Troy committed a fraud upon the Plaintiff (as that term is defined in the Court's instructions) and that the Plaintiff suffered damages as a proximate result of such fraud?

Answer Yes or No as
to each Defendant

Gold Key Leasing ___YES___

John M. Mannone ___YES___

John F. Troy ___YES___

**6.** The jury verdict as to compensatory and punitive damages stated the following:

6. If you answered yes to any of the preceding five questions [see footnote 5], what sum of money do you find from a preponderance of the

evidence to be the amount of Plaintiff's compensatory damages?

Answer in Dollars and Cents $ ___77,084.11___

7. If you answered Yes to any of Questions 2, 3, 4 or 5 above, do you further find from a preponderance of the evidence, as claimed by the Plaintiff, that the Defendants, or any of them, acted with malice, moral turpitude, wantonness, willfulness or reckless indifference to the rights of others?

Answer Yes or No as
to each Defendant

Gold Key Leasing ___YES___

John M. Mannone ___YES___

Jay M. Thorpe ___YES___

John F. Troy ___YES___

8. If you answered Yes to Question 7 above, what sum of money, if any, do you assess in favor of the Plaintiff and against the Defendant(s) as punitive damages?

Answer in Dollars and Cents
to each Defendant

Gold Key Leasing $ ___10,000___

John M. Mannone $ ___100,000___

Jay M. Thorpe $ ___50,000___

John F. Troy $ ___100,000___

1984), the court concluded that § 812.035 is remedial in nature and thus applies retroactively. "Remedial or procedural statutes do not fall within the constitutional prohibition against retroactive legislation and they may be held immediately applicable to pending cases." *Village of El Portal v. City of Miami Shores,* 362 So.2d 275, 278 (Fla.1978). Consequently, the 1984 amendment to the statute operates retroactively to prevent the awarding of punitive damages and trebled damages in this case. *See Cutler v. Pelletier,* 507 So.2d 676 (Fla. 4th D.C.A. 1987) (appellate court applied amended version of § 812.035(7) in reversing lower court's award of both punitive and treble damages).

## IV. CONCLUSION

We find that there was sufficient evidence for the jury to find Thorpe guilty of civil theft, conversion, and civil conspiracy. Moreover, the district court correctly trebled the compensatory damages the jury awarded and eliminated the punitive damage award. Accordingly, the district court is AFFIRMED.