**MISABEC MERCANTILE, INC. DE PANAMA, a Panamanian corporation, Plaintiff–Appellant,**

v.

**DONALDSON, LUFKIN & JENRETTE ACLI FUTURES, INC., a Delaware corporation as successor to ACLI International Commodities Service, Inc., a Delaware corporation, Defendant–Appellee.**

No. 87–5113.

United States Court of Appeals, Eleventh Circuit.

Aug. 29, 1988.

---

Gary Brookmyer, Broad & Cassel, Miami, Fla., Leslie A. Blau, Winston & Strawn, Chicago, Ill., for defendant-appellee.

Before TJOFLAT and HILL, Circuit Judges, and WARD *, District Judge.

HORACE T. WARD, District Judge:

In this case, the appellant challenges the district court's grant of summary judgment to the appellee. The appellant also contends the district court abused its discretion in refusing to permit further discovery before considering the motion for summary judgment. We affirm.

## I. FACTS

Appellant, Misabec Mercantile, Inc., had an account with the appellee, Donaldson, Lufkin & Jenrette ACLI Futures, Inc. [ACLI], to trade in commodities futures. When Misabec failed to meet several margin calls ACLI liquidated the account. Misabec then filed suit claiming conversion, civil theft, breach of contract, and breach of fiduciary duty.

After the discovery period ended ACLI moved for summary judgment. While this motion was pending, the parties entered into a pretrial stipulation that included a statement of facts which were not in dispute.[1] These stipulated facts included the following: Misabec is a Panamanian corporation and Sami Behar is its agent in the United States. Misabec initially opened an account with ACLI to trade in commodities futures in 1980. At that time, Behar, on behalf of Misabec, signed a customer agreement with ACLI which provided, in part:

4. You [ACLI] shall have the right (i) whenever in your sole discretion you consider it necessary for your protection, because of margin requirements or otherwise ... to ... sell any or all securi-

Edward A. Kaufman, P.A., Miami, Fla., for plaintiff-appellant.

---

* Honorable Horace T. Ward, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. R.2 at Tab 76.

ties, commodity futures contracts or commodities long in the customer's account(s).... Any sale of commodities long in an account ... may be made according to your judgement and at your discretion on any exchange or other market where such business is then usually transacted.

$\ast$ $\ast$ $\ast$ $\ast$ $\ast$ $\ast$

8. The proper original and variation margin, as determined by you in your sole discretion, will be maintained by the customer in any and all accounts the customer may at any time carry with you. If you determine that additional margin is required, the customer agrees to deposit with you such additional margin upon demand, provided, however, notwithstanding any demand for additional margin, you may at any time proceed in accordance with paragraph 4 above. You may change margin requirements in your sole discretion and at any time. No previous margin shall establish any precedent.

The agreement also provided that it could only be amended through written statement signed by an authorized officer of ACLI and that transactions were subject to the rules of the exchange upon which they were negotiated.[2] These exchange rules require that when an order is placed for a new position the purchaser must deposit funds to cover "initial margin" for that position.[3]

Trading began in the account. After a year of trading, ACLI told Misabec to close out the account because of delays in meeting margin calls. Plaintiff did so. After a change in management at ACLI, an ACLI account executive once again solicited Misabec's business.

Trading resumed in the account in June 1982. At that time Behar requested that all correspondence regarding Misabec's account be sent to the office of its broker, Eli Israel. On July 2nd and 6th of 1982, Misabec established large positions in coffee, cotton, and other futures contracts. On July 7th ACLI sent Israel a telex which stated that Misabec's account had outstanding margin calls in the amounts of $615,000 for initial margin and $375,750 for maintenance margin. The telex requested Misabec to give immediate attention to the matter. ACLI was assured that additional funds would be deposited promptly. Additional positions were added to the account on July 8th and 9th and initial margin calls were generated for these positions.

Sami Behar left for vacation in Europe on July 9th. An ACLI agent advised the ACLI office in Geneva, Switzerland that Behar was authorized to trade with ACLI on behalf of Misabec. Behar placed several orders when he was in ACLI's Geneva office on July 12th, 13th, and 15th. Misabec remitted $200,000 to ACLI on July 12th, leaving an outstanding initial margin call in its account of $262,325. After July 15th Behar continued his European vacation. He did not give ACLI any means of contacting him while he was on vacation; he did not wish to be disturbed while he was on vacation.

On July 20th, ACLI's records still indicated that there were unmet initial margin calls in Misabec's account. ACLI placed the account on "liquidation only" status at that time. By July 23rd Misabec had liquidated all of the contracts in the account except for some cotton and coffee contracts. ACLI had made daily demands for funds through Israel from July 20th on and on July 27th it sent two telexes to Misabec, in care of Israel, warning that if funds were not received immediately the account would be liquidated. Funds were not received and, on July 30th, ACLI liquidated the account. The cash balance generated by the liquidation was transferred to Misabec's bank. Israel unsuccessfully protested the liquidation, arguing that he was unable to communicate with Behar until Behar returned from Europe.

ACLI's decision to liquidate the account was not based on any financial exposure of ACLI but rather on the length of time the margin call had been outstanding and the

2. *Id.* at Exh. 1.

3. *Id.* at Exhs. 2 & 3.

facts that Behar could not be reached and that Misabec could not send any funds until Behar returned. Behar returned to the United States on September 9th.

Other facts which were not stipulated but were not contested by the plaintiff were that COMEX, the commodity exchange designated to conduct audits of ACLI, conducted such an audit in early August 1982 and expressed at that time "deep concern" regarding the length of time that outstanding margin calls had existed on Misabec's account and questioned whether ACLI had acted promptly enough in liquidating the Misabec account.[4] The plaintiff also did not contest the fact that under ACLI policy and the applicable exchange rules, an initial margin call must be met with cash or available equity present in the account at the time the position generating the initial margin call is first established; market appreciation in a position cannot be used to satisfy the initial margin call created by that position nor can liquidation of a position be used to satisfy the initial margin call created by that position.[5] Plaintiff did, however, submit an affidavit in which an expert in commodities futures opined that at the time of liquidation ACLI had not been in imminent danger of any financial loss, that ACLI was authorized by exchange rules to exercise reasonable discretion in liquidating the account, and that the liquidation of the account violated the business practice, custom, and procedure which had been established between ACLI and Misabec.[6] The expert alternatively concluded that ACLI had violated its own policies and exchange rules by failing to liquidate the account in a timely manner and permitting new positions to be added while Misabec was on margin call.[7]

The magistrate[8] granted summary judgment for the defendant, reasoning that Misabec breached the agreement it had had with ACLI and thereby gave ACLI good cause to liquidate the account. She concluded that because the appropriate claim was one of breach of contract the requisite elements of neither conversion nor theft had been plead and that no breach of fiduciary duty had been shown. She specifically noted that Misabec had not complied with the requirement that initial margin calls be met with cash, that ACLI had had to advance funds to cover initial margin for Misabec, and that Misabec did not come into this litigation with clean hands. ACLI made a motion for rehearing and this motion was denied.

## II. DISCUSSION

### A. SUMMARY JUDGMENT

Appellant's first claim is that the magistrate erred in granting summary judgment to ACLI. Our review of the grant of summary judgment is plenary and is to be conducted utilizing the same legal standards as those imposed upon the district court. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985). Summary judgment is only proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Warrior Tombigbee Transportation Co., Inc. v. M/V NAN FUNG*, 695 F.2d 1294, 1296 (11th Cir.1983); Fed.R.Civ.P. 56(c). The court must review the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983).

 As stated above, Misabec's complaint made claims of conversion, civil theft, breach of contract, and breach of fiduciary duty. Misabec has failed to show that any genuine issue of material fact exists regarding its conversion claim. " '[C]onversion is an unauthorized act

---

4. Sidhu affidavit of September 10, 1986.

5. Suelzer affidavit; Bevan affidavit; Holland affidavit. *See also* Exh. 2 attached to Behar Deposition of August 13, 1986.

6. Hallberg affidavit.

7. *Id.*

8. The parties stipulated that the case would proceed under Magistrate Patricia Jean Kyle and that she was authorized to enter final judgment in the case. *See* 28 U.S.C. § 636(c)

which deprives another of his property permanently or for an indefinite time....' A conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met." *Shelby Mutual Ins. Co. v. Crain Press*, 481 So.2d 501, 503 (2d Fla.Dist.Ct. App.1985), *review denied*, 491 So.2d 278 (Fla.1986) *quoting Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Limited*, 450 So.2d 1157, 1160–61 (3d Fla.Dist.Ct. App.1984). Here, there was no unmet demand for the return of property. When Misabec's account with ACLI was liquidated, the proceeds from the liquidation were immediately deposited in Misabec's bank account. Misabec's property was returned to it before Misabec made any demand for its return and, therefore, no conversion occurred. *See Douglas v. Braman Porsche Audi, Inc.*, 451 So.2d 1038, 1039 (3d Fla.Dist.Ct.App.1984) (property returned before claim of conversion made).[9] In addition, as the magistrate found, a conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract. *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir.1985) (applying Florida law); *Douglas*, 451 So.2d at 1039.

■ Summary judgment for ACLI was also proper on the civil theft claim. A simple breach of contract does not ordinarily constitute civil theft. *Advanced Surgical Technologies*, 777 F.2d at 1505–07. Misabec has presented no evidence which would establish the requisite criminal intent to support its civil theft claim. *See St.*

*John v. Kuper*, 489 So.2d 833, 833 (3d Fla.Dist.Ct.App.1986).

■ No genuine issue of material fact exists regarding Misabec's breach of contract claim. The contract's terms permitted ACLI to liquidate the account "whenever in your [ACLI's] sole discretion you consider it necessary for your protection". It is clear from the undisputed facts that Misabec's account was liquidated because ACLI needed to protect its position. The relevant exchange rules require margin calls to be met within a few days (or a "reasonable time") after they are made and provide that when a customer fails to meet a margin call in a timely fashion the company must liquidate that customer's account or sell sufficient positions to satisfy the outstanding margin calls.[10] Thus, Misabec's continued and patently unreasonable failure to meet margin calls [11] placed ACLI in the position of being in violation of exchange rules. In liquidating the Misabec account, ACLI took an appropriate step to protect itself from being in continuing violation of the exchange rules. The liquidation therefore did not constitute a breach of contract.

Misabec argues that because ACLI concedes its reason for closing the account was not any financial exposure of ACLI, the liquidation did not fall within the class of liquidations permitted under the contract. This argument fails to consider, however, that ACLI is not only entitled to protect itself from financial risk but also from participating in a continuing violation of exchange rules. Misabec also argues that the exchange rules did not require liquidation, because at the time the account

9. *Cf. Aero Int'l Corp. v. Florida Nat'l Bank of Miami*, 437 So.2d 156–157–60 (3d Fla.Dist.Ct. App.1983), *review denied*, 449 So.2d 264 (Fla. 1984) (defendant given specific instructions concerning disposition of funds; defendant's failure to follow these instructions, in the face of repeated demands by the plaintiff, held to constitute conversion); *All Cargo Transport, Inc. v. Florida East Coast Ry. Co.*, 355 So.2d 178, 179 (3d Fla.Dist.Ct.App.), *cert. denied*, 359 So.2d 1214 (Fla.1978) (debtor sent funds to creditor with instructions that they be credited against a certain debt; creditor's application of overpayment against another claimed debt held to constitute conversion).

10. R.1, Doc. 58, Exh. A to O'Brien affidavit, at Rule 2.03; R.2, Tab 76, at Exh. 2 ¶ 2557; R.2, Tab 82, Exh. foll. Holland affadavit at ¶ 827.

11. Misabec has failed to produce any evidence that its margin calls had only been outstanding for a reasonable length of time. Its expert opines that ACLI acted unnecessarily and unreasonably in closing the account. R.2, Tab 83, Hallberg affidavit. However he does not state that Misabec's margin calls had only been outstanding a "reasonable" length of time.

was closed the only positions remaining in it were fully margined and the outstanding margin calls were for positions which had previously been liquidated. The flaw in this argument is that an initial margin call is not cancelled by either subsequent market movement or liquidation of the position which created the initial margin call.[12] ACLI was accordingly entitled to summary judgment on the breach of contract claim.

■ Misabec's final claim is one of breach of fiduciary duty. It argues that commodities brokerages owe their customers more than a duty to refrain from making unauthorized trades. A proper statement of the fiduciary duty a brokerage owes its customers, it says, is that the brokerage has an added degree of responsibility to carry out preexisting, agreed upon tasks properly. Assuming *arguendo* that Misabec's proffered standard for its fiduciary duty is the appropriate one, our conclusion that no genuine issue of material fact exists concerning the breach of contract claim demonstrates that ACLI carried out its preexisting, agreed upon tasks properly and thus forecloses the breach of fiduciary duty claim. Misabec has therefore failed to demonstrate that a genuine issue of material fact exists regarding its claims.[13]

## B. DISCOVERY

■ In the district court, ACLI filed its motion for summary judgment, Misabec responded, and then ACLI filed a Reply Brief. Submitted with ACLI's Reply Brief were affidavits and an exhibit which to-gether indicated that when a commodities position is established the brokerage must advance funds to the exchange to cover the position's initial margin call and then look to the customer for reimbursement.[14] The materials indicated that ACLI had had to advance $180,000 to the Chicago Mercantile Exchange to cover initial margin costs for positions taken by Misabec.[15] ACLI's accompanying brief argued that:

> Misabec asks this court to hold that Misabec had the right to maintain its account after forcing ACLI to pay $180,000 of initial margin to the CME, at ACLI's cost and expense, without ever receiving funds from plaintiff. This is not the law. If Misabec can do this to ACLI, then any customer has the legal right to speculate with the money of any brokerage firm while enjoying a European vacation. Misabec failed to meet a CME margin call.... There is no such thing as a 'phantom' call and ACLI acted properly in liquidating Misabec's account after Misabec forced ACLI to put up huge sums of money which Misabec then failed to deliver.[16]

Misabec responded with a motion for leave to continue discovery. It argued in the motion that ACLI's Reply Brief had contained new factual allegations and that it was unable to adequately defend against these allegations without clarifying them through further discovery. The magistrate held a hearing on the motion for summary judgment and then entered her order on it without expressly ruling on Misabec's mo-

---

**12.** Thus, the facts do not support Misabec's argument that once a position is liquidated, the initial margin call created by that position is merely a "phantom call".

**13.** Misabec also argues that the magistrate's order indicates she weighed the evidence and made findings regarding factual disputes rather than reviewing the evidence in the light most favorable to the nonmoving party, as required by Fed.R.Civ.P. 56(c). We find that although the magistrate's order refers to "findings" and "weighing arguments," it essentially related the undisputed facts and applied the law to these facts. In addition, it should be noted that the magistrate reached the same ultimate conclusion as the one we have reached. Even if it is assumed that the trial court's reasoning was incorrect, because a decision to grant summary judgment does not involve the exercise of discretion by the trial court the fact that it may have incorrectly reasoned its way to this correct result is irrelevant to this appeal. *See Collins v. Seaboard Coastline R.R.*, 681 F.2d 1333, 1335 (11th Cir.1982).

**14.** R.2 at Tab 82, Holland & Sidhu affidavits.

**15.** *Id.* The materials also reiterate that an existing initial margin call cannot be satisfied by liquidation of the account which created the margin call.

**16.** R.2, Tab 82 at 3 (footnotes omitted).

tion for leave to continue discovery.[17]

Misabec now renews its argument that ACLI's Reply Brief raised a new issue and that Misabec should have been permitted to conduct discovery relevant to this issue before the court ruled on summary judgment. This "new issue," according to Misabec, is what it characterizes as ACLI's allegation that ACLI advanced money to the exchange to cover some initial margin calls for Misabec and was never reimbursed.[18]

The Supreme Court recently emphasized that summary judgment should be denied in instances where the nonmoving party has not had the opportunity to discover information that is essential to its opposition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986). This maxim, however, does not require reversal in this instance. Whether or not ACLI was reimbursed for funds it advanced on behalf of Misabec is irrelevant here; ACLI need not rely on this argument in order to sustain the district court decision, as it has demonstrated an independent and contractually adequate basis for liquidating Misabec's account. *Cf.* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2738 at 467–69 (erroneous admission of an affidavit does not require reversal of summary judgment if the error is harmless).

## C. MOTION TO STRIKE AFFIDAVITS

The pretrial stipulation filed by the parties included a list of the witnesses each planned to present at trial. ACLI submitted in support of its motion for summary judgment the affidavits of two persons who were not included in its witness list. Misabec moved to strike these affidavits, arguing that ACLI should not be permitted to rely on affidavits given by persons who were not eligible to be trial witnesses. The magistrate ruled on summary judgment without expressly addressing Misabec's motion to strike.[19]

In this appeal Misabec renews its argument that in considering the motion for summary judgment the magistrate should not have considered affidavits of persons who had not been listed in the pretrial stipulation. We find this contention meritless. The local rules of the trial court require that a pretrial stipulation be filed by the parties and provide that after the stipulation is filed a pretrial conference is to be held with the court.[20] They state that "[u]pon the *conclusion* of the pretrial conference, the Court will enter further orders as may be appropriate. *Thereafter* the pretrial stipulation as so modified will control the course of the trial...."[21] These rules indicate that the parties only become bound by the witness lists they included in the pretrial stipulation *after* the pretrial conference, when the trial court adopts the pretrial stipulation. The record before us contains no indication that a pretrial conference was held prior to issuance of the magistrate's summary judgment order.[22] Thus, Misabec's premise that two of ACLI's affiants were ineligible to be trial witnesses is incorrect. At the time the magistrate issued her summary judgment order she was free to permit the parties to add witnesses to the pretrial stipulation.[23]

---

**17.** The motion for leave to continue discovery was pending when summary judgment was entered. Under these circumstances we must consider the motion to have been denied by implication. *See WSB–TV v. Lee,* 842 F.2d 1266, 1268 n. 1 (11th Cir.1988).

**18.** When ACLI's argument is read in context, it appears a more accurate characterization of it would be that because Misabec failed to *promptly* reimburse it for funds it had advanced to the exchange, Misabec was using the time value of ACLI's money.

**19.** The motion to strike affidavits was pending when summary judgment was entered. Under these circumstances we must consider the mo-

tion to have been denied by implication. *See WSB–TV v. Lee,* 842 F.2d 1266, 1268 n. 1 (11th Cir.1988).

**20.** S.D.Fla. Local Rules, Rule 14(E).

**21.** *Id.,* at Rule 14(F) (emphasis supplied).

**22.** The record also contains no indication that the magistrate adopted or approved the pretrial stipulation.

**23.** The local rules also provide that even after the trial court adopts a pretrial stipulation it has the authority to permit amendments which serve to prevent manifest injustice.

In addition, "the choice of materials to be considered in conjunction with a summary judgment motion is within the discretion of the trial judge. It is our view that the case management powers accorded to federal trial judges ... are controlling in this regard." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 494 F.Supp. 1161, 1168 (E.D.Penn.1980) (court considered materials which were not submitted until after argument was held on summary judgment motion); *see generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2721 at 44. Misabec has failed to demonstrate that reversal is warranted.

## D. SANCTIONS

ACLI argues that this appeal is frivolous and that Misabec should be assessed sanctions for bringing it. It contends that Misabec delayed proceedings in the district court by changing its theory of recovery and that it has attempted to obscure the real issues on appeal.

Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Rule 38 sanctions have been imposed against appellants who raise "clearly frivolous claims" in the face of established law and clear facts. *See, e.g., United States v. A Single Family Residence*, 803 F.2d 625, 632 (11th Cir.1986); *Stubbs v. Commissioner*, 797 F.2d 936, 938–39 (11th Cir.1986). This is not such a case. We accordingly decline to impose Rule 38 sanctions.

## III. CONCLUSION

For the reasons discussed above, the judgment of the magistrate is

AFFIRMED.

ACLI's request for sanctions is DENIED.