456 So.2d 949 (1984)
Roberta BLATT, As Guardian of Vera Horn, Incompetent and Estate of Vera Horn, Appellant,
v.
GREEN, ROSE, KAHN & PIOTRKOWSKI and Howard Rose, Appellees.
No. 84-572.
District Court of Appeal of Florida, Third District.
September 18, 1984.
Rehearing Denied October 24, 1984.
*950 Albert J. Zemlock, Miami, for appellant.
Green, Rose, Kahn & Piotrkowski and Howard Green, for appellees.
Before NESBITT, BASKIN and FERGUSON, JJ.
NESBITT, Judge.
Roberta Blatt, as guardian of Vera Horn, incompetent, and estate of Vera Horn, deceased, appeals an order dismissing her amended complaint with prejudice as against Howard Rose, individually, and as a member of Green, Rose, Kahn & Piotrkowski, a lawyer partnership. We reverse.
Vera Horn lived with Albert Gersh as his common-law wife for about 25 years. Gersh died on March 2, 1982, leaving $5,000 to Horn and his residuary estate to Gloria Reinhart, his granddaughter, and her children, Peter Lustig and Neil Lustig. An agreement was entered into between these beneficiaries whereby Reinhart and the Lustigs transferred and assigned to Horn thirty per cent of the residual portion of Gersh's estate in return for Horn's relinquishment of any and all claims against the estate. This written agreement was drawn up by Rose and was signed by the four beneficiaries.[1]
Initially, Horn and Peter Lustig were appointed personal representatives of the estate. Shortly thereafter, however, Horn suffered a stroke which ultimately led to her being declared incompetent, with Blatt, her niece being appointed her guardian. Subsequently, Horn died leaving her entire estate to Blatt, who was appointed personal representative of Horn's estate.
When Horn had fallen ill, she was removed as personal representative of Gersh's estate. In her place, Reinhart and Neil Lustig were appointed as personal representatives. Thus, the three residuary beneficiaries became co-personal representatives of the estate.
Rose, a partner in Green, Rose, Kahn & Piotrkowski, was the resident agent of Reinhart and the Lustigs, all of whom lived outside the state of Florida. Rose was retained by Reinhard and the Lustigs, in their capacity as personal representatives of Gersh's estate, to represent them in the administration of the estate. While in this position, Rose received a number of letters from Horn's attorney which sought an accounting of the estate so that Horn's share under the agreement could be determined. It is alleged that Rose ignored these letters until after the assets of the estate had been distributed.
Blatt brought this action charging in part that Rose had conspired with Reinhart and the Lustigs to deprive Horn of the thirty per cent of the residuary estate to which she was entitled pursuant to the agreement. Upon motion, the trial court dismissed with prejudice the complaint as against Rose and the law firm of which he is a partner. This appeal followed.
The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff. Liappas v. Augoustis, 47 So.2d 582 (Fla. 1950); American Diversified Insurance Services, Inc. v. Union Fidelity Life Insurance Co., 439 So.2d 904 (Fla. 2d DCA 1983); Buckner v. Lower Florida Keys Hospital District, 403 So.2d 1025 *951 (Fla. 3d DCA 1981). Thus, a cause of action for civil conspiracy exists in the present case only if "the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person."[2]American Diversified, 439 So.2d at 906. We must examine the complaint, therefore, to determine whether it states a cause of action in civil conspiracy based upon an independent wrong.
The complaint alleges that Rose prepared the agreement whereby the residuary beneficiaries assigned thirty per cent of the residual portion of the estate to Horn, and Horn relinquished all claims she might have against the estate, as Gersh's widow or otherwise.[3] It also alleges that Reinhart and the Lustigs, as personal representatives of Gersh's estate, failed to pay the thirty per cent portion, although demanded. Further, it is apparent that all the parties involved were fully aware of the agreement at all times. The complaint further alleges that Rose obtained court orders and took other various steps to have the assets of the estate distributed without regard to the agreement. Finally, it is alleged that Reinhart and the Lustigs "being the sole beneficiaries and personal representatives of the Estate[,] distributed all of the assets of the ESTATE OF ALBERT GERSH to themselves" without regard to the previously-entered agreement.
We find that the complaint states a cause of action for civil conspiracy based upon an independent wrong, specifically: a violation of the fiduciary duty imposed by the Florida Probate Code. It is clear that Horn, Reinhart and the Lustigs were all "interested persons" within the meaning of the code. § 731.201(21), Fla. Stat. (1981). Section 733.815 provides in pertinent part that:
competent interested persons may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will or under the laws of intestacy in a written contract executed by all who are affected. The personal representative shall abide by the terms of the agreement... .
Under the allegations of the complaint, such an agreement was executed in the present case, and, therefore, Reinhart and the Lustigs, as personal representatives, had a duty imposed by the statute to abide by the terms of the agreement. This duty they allegedly breached when they, in bad faith, ignored the agreement and improperly had all the assets distributed to themselves as the residuary beneficiaries. If these allegations are ultimately proved, the personal representatives would be liable to Horn for the damages or loss which resulted from the breach of this fiduciary duty. § 733.609. See In Re Francis' Estate, 153 Fla. 360, 14 So.2d 803 (1943) ("payment to a legatee after notice of an assignment of his interest is at the risk of the representative").
Admittedly, the complaint cannot be characterized as a model of clear-cut allegations of a civil conspiracy based upon the personal representatives' breach of a fiduciary duty. Nonetheless, under the broad pleading concepts in this state, Blatt should be given the opportunity to prove, if she can, that Rose conspired with the personal representatives in committing the alleged breach of fiduciary duty. See American Diversified.
We emphasize that our holding is limited to finding that under Florida's broad and liberal pleading concepts, Blatt has stated a cause of action. Her ability to prove the allegations of breach of fiduciary duty and the conspiracy of Rose in that breach is another matter. Extreme caution should be exercised when an attempt is made to hold an attorney liable for a wrong committed by his client by way of a civil conspiracy cause of action. It is appropriate *952 in this context to reiterate the language of this court in Pickard v. Maritime Holding Corp., 161 So.2d 239, 241 (Fla. 3d DCA 1964):
It is recognized that an attorney acting under employment, at the direction of his client and in [a] legal manner is not liable for the consequences of his client's actions. [citations omitted] Thus, the question now before us is whether there is sufficient evidence in the record upon which the jury could find that [the attorney] acted illegally or beyond his employment in order to secure an unconscionable advantage against the [plaintiff]. The action of an attorney in a lawsuit frequently angers his client's opponent because the attorney by his energy often must advance his client's cause at the expense of the opponent. It is not infrequent that persons who have lost a lawsuit because of actions undertaken by an attorney on behalf of his client, feel that they have been unjustly dealt with by the attorney. Such results are one of the unfortunate byproducts of the adversary system before the courts. Nevertheless, the advantages of the adversary system in securing a full disclosure of the facts to the courts is such that we must accept its disadvantages.
We find that this cautionary language is equally appropriate in the context of the present case.
We have considered the other points raised by the parties and find that they do not merit discussion. Upon the above reasoning, we reverse the order which dismissed Blatt's complaint against Rose and the law firm and remand for further proceedings.
NOTES
[1] The record reflects that if Rose was representing any of the parties at the time the agreement was entered into, it was Reinhart and the Lustigs, and not Horn. Therefore, Rose owed no attorney-client fiduciary duty to Horn. See Adams v. Chenowith, 349 So.2d 230 (Fla. 4th DCA 1977).
[2] The second type of civil conspiracy, sometimes referred to as an "economic boycott," is not involved in the present case. See Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla. 1977); Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla. 1958); American Diversified.
[3] This apparently included the $5,000 bequest to Horn.