504 So.2d 486 (1987)
AMERICAN CREDIT CARD TELEPHONE COMPANY, and Hartley Lord, Appellants,
v.
NATIONAL PAY TELEPHONE CORPORATION, Willkie Farr & Gallagher, Neil Rosenstein, Ross Scheer, and Mary P. Jaffe, Appellees.
No. BO-221.
District Court of Appeal of Florida, First District.
March 20, 1987.
*487 Douglas W. Abruzzo of Donald L. Tucker, P.A., Tallahassee, for appellants.
Hume F. Coleman, Harry R. Detwiler, Jr., and Michael L. Rosen of Holland & Knight, Tallahassee, for appellees.
WIGGINTON, Judge.
Appellants, American Credit Card Telephone Company and Hartley Lord, bring this appeal from the final judgment of the trial court dismissing all counts of their complaint. We affirm on all but one point.
American Credit Card Telephone Company (ACCT) and appellee National Pay Telephone Corporation (NPT) are companies engaged in the business of providing public pay telephone service. During 1985, both applied for authorization from Florida's Public Service Commission (PSC) to provide pay telephone service. NPT was so authorized by the PSC on June 13, 1985. In October, the PSC noticed a proposed agency action to grant authorization to ACCT. Shortly thereafter, NPT filed a petition for a formal administrative hearing to contest the proposed authorization of ACCT. The PSC unanimously found that NPT was without standing to initiate a formal hearing, that there were no disputed issues of material fact so as to require a formal hearing, and that NPT's allegations regarding ACCT's purportedly unlawful activities were not properly brought before the PSC. NPT did not appeal that order.
On February 5, 1986, ACCT and Hartley Lord, president of ACCT and the owner of one million shares of NPT, filed a civil action against NPT, two of its officers, Ross Scheer and Neil Rosenstein, NPT's corporate counsel, Willkie Farr & Gallagher (WFG), and an associate of that firm, Mary P. Jaffe. The complaint in eight counts alleged that the defendants had engaged in (1) conspiracy in restraint of trade; (2) malicious prosecution; (3) defamation per se and per quod; (4) tortious conspiracy to harass and defame; (5) professional malpractice on the part of WFG; and (6) the investment in NPT of funds obtained through the collection of unlawful debts in violation of the RICO statute. In addition, in counts IX and X, Hartley Lord sought to bring a shareholder's derivative action on behalf of NPT to recover indemnification from Scheer and Rosenstein should a judgment be entered against NPT, and a class action on behalf of all NPT shareholders to enjoin Scheer and Rosenstein from directing NPT in further unlawful acts which could jeopardize the value of the shares held by the class. The trial court granted appellees' motions to dismiss and accorded appellants leave to amend. Appellants declined amendment and requested rendition of a final appealable order.
Under point I, appellants maintain that counts I and II of the complaint allege an actionable anticompetitive combination in violation of section 542.18, Florida Statutes. That section holds unlawful "[e]very contract, combination, or conspiracy in restraint of trade or commerce in this *488 state... ." We agree with appellees that, in line with general principles of federal antitrust law,[1] there was no conspiracy or combination.
Section 1 of the Sherman Act does not reach conduct that is wholly unilateral. Copperweld Corporation v. Independence Tube Corporation, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Moreover, courts have long held that a corporation cannot agree, combine, or conspire with its officers, employees, or agents. See H & B Equipment Co., Inc. v. International Harvester, 577 F.2d 239, 244 (5th Cir.1978); see also St. Petersburg Yacht Charters v. Morgan Yacht, Inc., 457 So.2d 1028, 1041, n. 4 (Fla. 2d DCA 1984). Thus, the key issue herein is whether outside counsel is to be considered as falling within that rule. Clearly, had NPT employed in-house counsel there would have been no question but that such counsel would have been an agent and any conduct on behalf of NPT and its counsel would have been wholly unilateral. See Person v. New York Post Corporation, 427 F. Supp. 1297, 1306-1307 (E.D.N.Y.), aff'd, 573 F.2d 1294 (2d Cir.1977). Nonetheless, we hold the same to be true for outside counsel as well. See Doherty v. American Motors Corp., 728 F.2d 334, 340 (6th Cir.1984).
In so holding, we distinguish the circumstances in the instant case from those existing in Albrecht v. Herald Company, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) and International Travel Arrangers, Inc. v. Western Airlines, Inc., 623 F.2d 1255 (8th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980), relied on by appellant. Both cases involved independent third party contractors pursuing their own economic interests, as opposed to the unique position held by WFG as NPT's legal counsel; for without WFG, NPT could not have effectively participated in the litigation before the PSC.[2] Thus, for all intents and purposes, NPT's act of employing WFG as its advocate caused NPT and WFG to merge and become a single entity.
Appellant alternatively argues that a conspiracy arose between Scheer and Rosenstein individually on the one hand, and WFG and Jaffe on the other, and between Jaffe individually and NPT, Scheer and Rosenstein, citing to the rule that a corporate officer may be sued for tortious acts or derelictions of duty in which he personally participated. White-Wilson Medical Center v. Dayta Consultants, Inc., 486 So.2d 659, 661 (Fla. 1st DCA 1986). However, the complaint makes no allegations that Jaffe, Scheer, and Rosenstein were acting under any independent motivation. To the contrary, the complaint only alleges facts showing that Jaffe, Rosenstein, and Scheer acted in their official capacities as officers, directors, and employees of WFG and NPT.
Regarding point II, we affirm the trial court's dismissal of the malicious prosecution count. A cause of action for malicious prosecution consists of six essential elements: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant against the plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice; and (6) damages conforming to legal standards resulting to the plaintiff. Gause v. First National Bank *489 of Marianna, 457 So.2d 582 (Fla. 1st DCA 1984). If any one of these elements is lacking, the result is fatal to the cause of action. Buchanan v. Miami Herald Publishing Co., 230 So.2d 9, 11, n. 3 (Fla. 1969). Appellees add that a prior judicial proceeding, as opposed to an administrative proceeding, is essential to the maintenance of a claim for malicious prosecution. However, an agency proceeding may at some point become sufficiently quasi-judicial to support a claim for malicious prosecution. See generally, Melvin v. Pence, 130 F.2d 423, 426-427 (D.C. Cir.1942); Davis v. McCrory Corp., 262 So.2d 207 (Fla. 4th DCA 1972); G.C. Murphy & Company v. Freshko, 293 So.2d 791 (Fla. 3d DCA 1974). Nonetheless, we find that the proceedings in the instant case did not reach that point, and that NPT's filing of a petition for a 120.57 hearing did not commence a quasi-judicial proceeding for purposes of satisfying the first element. Below, the PSC never assumed a quasi-adjudicatory role over the parties. Instead, the action it took in dismissing the petition for lack of standing was strictly preliminary since, under rule 25-22.036(9)(b) it has the option, where a petition on proposed agency action has been filed, either to deny the petition or to grant the petition and determine if a section 120.57(1) hearing or a section 120.57(2) hearing is required. Compare Northwest Florida Home Health Agency v. Merrill, 469 So.2d 893 (Fla. 1st DCA), rev. denied, 479 So.2d 118 (Fla. 1985).
In so holding, we necessarily defeat appellees' argument that its statements were privileged as being made in the course of a quasi-judicial proceeding. Consequently, we reverse under point III the trial court's dismissal of counts IV and V alleging defamation per se and per quod.
As to appellant's point IV, because we held under points I and II that there was no conspiracy, we affirm the trial court's dismissal of count VI alleging conspiracy to commit a tort. Although appellants cite to Blatt v. Green, Rose, Kahn and Piotrkowski, 456 So.2d 949 (Fla. 3d DCA 1984), for the proposition that NPT could conspire with its attorney, WFG, a fair reading of Blatt shows the allegations were sufficient to indicate that the attorney therein acted in an individual capacity. The same was true of the corporate officer in White-Wilson Medical Center v. Dayta Consultants, Inc., 486 So.2d 659 (Fla. 1st DCA 1986). Thus, Rosenstein and Scheer could not be found to have conspired with NPT unless it was shown that they had a personal stake in the illegal activities separate and distinct from that of the corporation. Jewel Foliage Company v. Uniflora Overseas Florida, Inc., 497 F. Supp. 513, 518 (M.D.Fla. 1980). In Denenberg v. American Family Corp. of Columbus, Georgia, 566 F. Supp. 1242 (E.D.Pa. 1983), it was held that the defendant attorney for the defendant corporation could conspire "only if he acted solely to injure the plaintiff rather than as an attorney seeking to advance the interest of [the corporate defendant]." Id. at 1253. The complaint in the instant case does not allege facts sufficient to show that Scheer and Rosenstein were acting on their own behalf.
Turning to point V, appellants argue that count VII was improperly dismissed, claiming that WFG is liable for malpractice. Relying on Oberon Investments, N.V. v. Angel, Cohen & Rogovin, 492 So.2d 1113, 1114-1115 (Fla. 3d DCA 1986), review granted, Case No. 69,398 (Fla. Feb. 6, 1987), appellants argue that there is no reason why attorneys should not be treated as other licensed and regulated professionals who are liable to third parties for damages caused by their professional malpractice. On the other hand, appellees maintain, and we agree, that appellants have failed to allege a duty owed them from WFG and Jaffe with an attendant breach of that duty, an allegation fundamental to recover on a negligence/malpractice claim. Weiner v. Moreno, 271 So.2d 217, 219 (Fla. 3d DCA 1973). We thereby distinguish Oberon, wherein the court specifically found a duty on the part of the attorney to act in a third party's best interest despite the absence of privity ordinarily necessary to allow for recovery in a legal malpractice action.
*490 Under point VI, appellants maintain that the trial court erred in dismissing count VIII alleging a violation of chapter 895, Florida's RICO statute. We agree that the complaint does not set forth facts sufficient to allege a violation of section 895.03(2), Florida Statutes.
Finally, we affirm on points VII and VIII, challenging the dismissal of counts IX and X. We agree with appellees that Scheer and Rosenstein, California residents, were not subject to the jurisdiction of the trial court under section 48.193(1)(a) or (b), Florida Statutes. Excel Handbag Company, Inc. v. Edison Brothers Stores, Inc., 428 So.2d 348 (Fla. 3d DCA 1983). Moreover, the complaint does not allege conduct on the parts of Scheer and Rosenstein other than in their capacity as officers or agents of the corporation. Thus, White-Wilson Medical Center v. Dayta Consultants, Inc. is inapposite.
In sum, the trial court's order dismissing the complaint is affirmed except as to counts IV and V alleging defamation. As to those counts, the cause is reversed and remanded for further proceedings in the trial court.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] By section 542.32, the legislature has directed that in construing chapter 542, "due consideration and great weight be given to the interpretations of the federal courts" relating to the body of antitrust law developed under the Sherman Act. See St. Petersburg Yacht Charters v. Morgan Yacht, Inc., 457 So.2d 1028, 1032 (Fla. 2d DCA 1984).
[2] Although the PSC's rule 25-22.008, Florida Administrative Code, does not preclude self-representation, it does state that "the right of selfrepresentation [sic] does not allow nonlawyer corporate officers to represent the legal interest of their corporations except upon compliance with the requirements of subsection (3) of this rule." Subsection (3) provides that a person may receive a "Class B" certification by satisfying the commission "that he or she possesses legal skills and a knowledge of the law and utility regulatory matters which is greater than that possessed by the average person," as well as knowledge of the code of ethics for administrative proceedings.