667 So.2d 876 (1996)
PEOPLES NATIONAL BANK OF COMMERCE, Appellant,
v.
FIRST UNION NATIONAL BANK OF FLORIDA, N.A., et al., Appellees.
No. 94-2663.
District Court of Appeal of Florida, Third District.
January 31, 1996.
*877 Silverio & Hall and Mark V. Silverio; Patterson, Claussen, Santos & Hume and John H. Patterson, Jr., Miami, for appellant.
Holland & Knight and Daniel S. Pearson and Jose A. Casal and Lucinda A. Hofmann, Miami, for appellees Banco Bilbao Viscaya, S.A. and Banco Exterior de Espana, S.A.
Mishan, Sloto, Hoffman & Greenberg and Carol L. Cox, Miami, for appellee USX Credit.
Murai, Wald, Biondo & Moreno and Manuel Kadre, Miami, for appellee Pan American Bank.
Before NESBITT, GODERICH and GREEN, JJ.
PER CURIAM.
The plaintiff, Peoples National Bank of Commerce [Peoples National], appeals from a final order dismissing with prejudice all causes of action against four of the named defendants in the underlying action. We affirm.
In late 1988, Southeast Bank [Southeast] made two loans, a $21 million acquisition loan and a $12 million development loan, to Orchid Island Associates Limited Partnership for the development of a luxury community in Indian River County. The loans were secured by the 598 acres of real property [Orchid Island Property] that were to be developed.
Between July and November 1988, Southeast entered into individual, separate participation agreements with each of five lenders, Peoples National, USX Credit, Banco Exterior de Espana, S.A., Banco Bilbao Viscaya, S.A., and Pan American Bank [collectively referred to as the "participant lenders"]. Together, the participant lenders' shares totaled approximately 49% of the loan. Under each participation agreement, Southeast had a duty to receive payments of principal, interest, and fees from the developer, and after deducting administrative expenses, to remit payment to each participant lender in accordance with its proportionate share.
The developer defaulted on the loans, and in August 1991, Southeast sued to foreclose on the mortgages. One month later, the FDIC was appointed as Southeast's receiver, and Southeast was declared insolvent. Subsequently, First Union National Bank of *878 Florida [First Union] acquired Southeast's unparticipated portions of the loan, totaling 51%, from the FDIC. Although the FDIC considered First Union as the lead bank with regard to the participated portions of the loan, First Union maintained that it had not assumed Southeast's duties and liabilities for the unparticipated portions of the loan and that any such obligations remained with the FDIC as receiver.
Because First Union maintained that it had not assumed the role of lead bank with regard to these loans and because under each of the participation agreements the participant lenders were passive participants with no rights or powers concerning the disposition of the collateral in the event of a default, First Union attempted to obtain the participant lenders' consent to continue the foreclosure litigation through an Intercreditor Agreement. The Intercreditor Agreement created guidelines for the treatment of principal, interest, and collateral of the loans, as well as, guidelines for managing the foreclosure litigation and the sale and disposal of the loan collateral. First Union and all the other participant lenders executed the Intercreditor Agreement, but Peoples National refused to do so. Several months later, First Union and the participant lenders who had executed the Intercreditor Agreement signed an Addendum wherein they divided among themselves the share of voting rights that would have been attributed to Peoples National under the Intercreditor Agreement.
In June 1993, Peoples National sued First Union and the other participant lenders for declaratory relief and unjust enrichment seeking to recover alleged overpayments of principal and interest that Southeast had distributed to the other participant lenders. Three months later, after the defendants answered the complaint, Peoples National filed an amended complaint adding, as a defendant, Alden Pond, Inc., the wholly-owned First Union subsidiary that subsequently acquired title to the Orchid Island Property upon completion of the foreclosure action. The defendants answered the amended complaint.
In April 1994, Peoples National filed a second amended complaint that alleged eight more causes of action including one for conversion and one for tortious civil conspiracy against the other participant lenders. In the conversion count, Peoples National alleged that, by entering into the Intercreditor Agreement and the Addendum, First Union and the other participant lenders had converted Peoples National's proportionate interest in the collateral, loan proceeds, and voting rights to which it was entitled, pursuant to its participation agreement with Southeast. In the tortious civil conspiracy count, Peoples National alleged that the other participant lenders, with the intent of depriving Peoples National of its voting rights, had consented, concurred, and assisted First Union, as lead bank, in breaching its fiduciary duty to Peoples National.
All of the defendants filed motions to dismiss various counts of the second amended complaint. After a hearing, the trial court dismissed all claims against the other participant lenders with prejudice. Peoples National appeals that portion of the order dismissing the counts for declaratory judgment, unjust enrichment, and tortious civil conspiracy.[1] We affirm.
Peoples National raises three points on appeal that merit discussion. First, Peoples National contends that the trial court erred by dismissing its count for declaratory relief with prejudice where the other participant lenders' interests would be affected by the trial court's declarations. We disagree.
"A complaint seeking declaratory relief must allege ultimate facts showing a bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff...." Floyd v. Guardian Life Ins. Co. of Am., 415 So.2d 103, 104 (Fla. 3d DCA 1982). Here, we find Peoples National has failed to allege an adverse interest between itself and the other participant lenders concerning its rights. Because each of the participant lenders had a separate participation agreement with Southeast, Peoples National and the other participant lenders each derive their rights separately from *879 individual participation agreements with Southeast. Consequently, there is no adverse interest between Peoples National and any of the other participant lenders concerning any of Peoples National's rights. Declaratory relief is not a proper remedy with regard to the other participant lenders, and the trial court correctly dismissed with prejudice that count against the other participant lenders.
Second, Peoples National contends that the trial court erred by dismissing with prejudice its count for unjust enrichment where the other participant lenders, except for Pan American Bank, were unjustly enriched by Southeast's overpayments. We disagree.
"The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Hillman Const. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994) (citations omitted). Here, the plaintiff, Peoples National, could not and did not allege that it had directly conferred a benefit on the defendants, the other participant lenders. In actuality, if any benefit was conferred upon each participant lender in the form of overpayments, it could only have been conferred upon them by Southeast, not Peoples National. Because Peoples National failed to allege ultimate facts that support a prima facie case of unjust enrichment, the trial court properly dismissed with prejudice that count against the other participant lenders.
Lastly, Peoples National contends that the trial court erred by dismissing its count for tortious civil conspiracy with prejudice where the other lender participants acted in concert with First Union to deprive Peoples National of its rights. Again, we disagree.
[A]lthough the general rule is that "an act which constitutes no ground of action against one person cannot be made the basis for a civil action for conspiracy," in certain circumstances mere force of numbers acting in unison may comprise an actionable wrong. In essence, ... ordinarily there can be no independent tort for conspiracy. However, if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort. The essential elements of this tort are a malicious motive and coercion through numbers or economic influence.
Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547, 550 (Fla.1977) (citations omitted); see also, Blatt v. Green, Rose, Kahn & Piotrkowski, 456 So.2d 949, 950-51 (Fla. 3d DCA 1984); Buckner v. Lower Fla. Keys Hosp., Dist., 403 So.2d 1025, 1027 (Fla. 3d DCA 1981), review denied, 412 So.2d 463 (Fla. 1982).
Below, Peoples National alleges that when the other lender participants executed the Addendum to the Intercreditor Agreement, they consented, concurred, and assisted First Union in breaching its fiduciary duty, as lead bank, to Peoples National by distributing its voting rights. This allegation is baseless since the distribution of voting rights contained in the Addendum in no way altered Peoples National's proportionate share of the loan or loan proceeds since that share was dictated by Peoples National's original participation agreement with Southeast. In fact, Peoples National had no voting rights pursuant to its participation agreement with Southeast, rather the only voting rights it could have acquired would have been derived from the Intercreditor Agreement that was executed between First Union and the other participant lenders. However, Peoples National never acquired these voting rights because it refused to execute the Intercreditor Agreement. Therefore, the execution of the Addendum to the Intercreditor Agreement by the other participant lenders cannot constitute a civil wrong that caused injury to the plaintiff. Furthermore, Peoples National failed to plead sufficient facts to support the essential elements of malicious intent and coercion through numbers or economic influence *880 on the part of the other participant lenders. Therefore, the trial court properly dismissed with prejudice that count against the other participant lenders.
Accordingly, the trial court properly dismissed with prejudice Peoples National's counts for declaratory relief, unjust enrichment, and civil conspiracy against the other participant lenders.
Affirmed.
NOTES
[1] Peoples National does not appeal the dismissal of its count for conversion.