[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15571
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-02533-MSS-TBM


DAEDALUS CAPITAL LLC,
LOCKWOOD TECHNOLOGY CORPORATION,

>                                    Plaintiffs -
>                                    Counter Defendants -
>                                    Appellants,

INFRAX SYSTEMS, INC.

>                                    Plaintiff -
>                                    Counter Defendant,

                    versus

BRADFORD VINECOMBE,
BRUNO REIGL,
ADAM VINECOMBE,
ERIC VINECOMBE,
LOCKWOOD WORLDWIDE, INC.,
SWIFTSURE GROUP, LLC,

>                                    Defendants -
>                                    Counter Claimants -
>                                    Appellees

CHERYL S. REED, et al.,

                                                    Defendants,

LOCKWOOD TECHNOLOGY CORPORATION NEVADA,

                                        Defendant -
                                        Counter Defendant -
                                        Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 4, 2015)

Before HULL, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Appellants Daedalus Capital, LLC (Daedalus) and Lockwood Technology

Corporation (LTC) appeal the district court's order granting partial summary

judgment in favor of Appellees Bradford Vinecombe (Vinecombe), former

president of LTC; Bruno Riegl (Riegl), former employee of LTC; Adam and Eric

Vinecombe, former employees of LTC and Vinecombe's sons; Lockwood

Worldwide, Inc. (LWW), and Swiftsure Group, LLC (Swiftsure).  Appellants

argue the district court erred in granting summary judgment as to their counts

based on (1) violations of the Racketeer Influenced and Corrupt Organizations

(RICO) Act, 18 U.S.C. §§1962(c) and 1964, as well as Florida's Civil Remedies

for Criminal Practices Act (the Florida RICO Act), Fla. Stat. § 772.103(3)-(4); (2) fraud; (3) civil conspiracy; (4) breach of fiduciary duty; and (5) aiding and abetting breach of fiduciary duty.[1]  For the reasons below, we affirm.[2]

## I.  BACKGROUND

Vinecombe created LTC in 1994.  LTC originally performed two services: (1) selling and developing asset tracking software and (2) providing asset tracking services, such as physical inventory services.  In 2003, Vinecombe created LWW. Vinecombe's intention in creating LWW was to give the business to his sons Adam, Eric, and Craig.[3]  His plan was for LWW to take over the physical inventory services, while LTC would continue developing and selling asset tracking software.  LTC and LWW shared office space and often worked together on projects.

---

[1] More specifically, the district court granted partial summary judgment against Appellants on their claims of (1) federal RICO, (2) federal RICO conspiracy, (3) Florida RICO, (4) Florida RICO conspiracy, (5) fraud in the inducement, (6) common law fraud, (7) civil conspiracy, (8) aiding and abetting breach of fiduciary duty, and (9) breach of fiduciary duty. The analysis is the same with respect to each of the four RICO-based claims and with respect to both fraud-based claims.  For clarity purposes, we discuss the four RICO-based claims collectively, as well as the two fraud-based claims.

[2] After the district court granted partial summary judgment against all of Appellants' federal claims, all that remained were some state law claims.  On November 14, 2014, the district court entered a final order dismissing the remaining state law claims without prejudice for lack of subject matter jurisdiction and closing the case.  Appellants timely appealed both orders. Because we affirm the district court's order granting partial summary judgment, we also affirm its order dismissing the remaining state law claims.

[3] Craig is not named as a party to this case.

3

On May 8, 2009, Vinecombe entered into a stock purchase agreement with Daedalus. Under the stock purchase agreement, Vinecombe sold 100% of LTC's preferred stock, convertible into a 70% ownership interest in LTC, to Daedalus for a purchase price of $1,250,000. Of the purchase price, $250,000 was paid to Vinecombe and the remaining $1,000,000 was invested in LTC. After the transaction, Vinecombe retained a 30% ownership interest in LTC and remained President and CEO of the company. In conjunction with the stock purchase agreement, Vinecombe and Riegl also entered into two-year employment agreements with LTC.

On May 29, 2009, Vinecombe, as President of LTC, and his son Adam, as president of LWW, executed a Teaming Agreement. By its terms, the Teaming Agreement was an "independent contractor teaming agreement." The agreement provided: "The rights, responsibilities and obligations of the parties shall be deemed to be independent contractors; one party cannot bind the other, and the employees of one party shall not be deemed to be employees of another party." The Teaming Agreement allowed one party to resell the services of the other party under their own individual contracts, or for the parties to jointly bid on project proposals.

In 2009, 2010, and 2011, LTC contracted with the Connecticut State Colleges and Universities (ConnSCU). LTC also contracted with a company

4

called EMC in 2008 and 2010. LWW performed physical inventory work on these projects under the LTC contracts. EMC and ConnSCU sent checks to LTC for payment. The checks were made payable to LTC. Each check was endorsed "Lockwood" and deposited directly into LWW's bank account.

Near the end of 2010, LTC began running low on funds. Ken Baritz (Baritz), a managing member of Daedalus, and Vinecombe discussed several options for the company. These options included (i) immediately shutting down LTC, (ii) terminating a software engineer, or (iii) having Daedalus invest more money in LTC to give the company a chance to get by while Baritz searched for another investor. Baritz agreed Daedalus would invest another $100,000 in LTC if Vinecombe and Reigl would agree to defer half of their salaries during that time period, to which they agreed.

In early 2011, an inquiry was received from Qatar University (QU) regarding LTC's asset tracking software. This agreement culminated in a three-phase asset management project that included use and integration of LTC's asset tracking software. LWW paid LTC $100,000 for the use of LTC's asset tracking software on December 30, 2011.

Riegl resigned from LTC on April 30, 2011. Around that time, Riegl and Vinecombe traveled to Qatar to begin the QU Project and were paid for their work by LWW.

In April 2011, Daedalus entered into a stock purchase agreement with Infrax Systems (Infrax).  Under this agreement, Daedalus received $1,650,000 worth of stock in Infrax and warrants to buy 660,000 additional shares of Infrax stock.  In exchange, Infrax took control of LTC.  Vinecombe resigned as president of LTC on June 3, 2011, but agreed to continue helping LTC as an independent contractor.

On March 1, 2013, Appellants Daedalus and LTC sued Appellees Vinecombe, Riegl, Adam, Eric, LWW, and Swiftsure alleging, in short, they were unlawfully targeted and defrauded of their property.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, construing all inferences in favor of the nonmoving party.  *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000).  Summary judgment is appropriate only when there are no genuine issues of material fact.  *Id.*

## III.  DISCUSSION

*1.  Federal and State RICO*

The district court did not err in granting summary judgment on Appellants' federal and state RICO counts.  To prove a RICO violation under both federal and Florida law, a plaintiff must establish, among other things, "continuity."  *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (explaining that, in addition to showing two or more related predicate acts, federal RICO

6

plaintiffs must show "the predicate acts demonstrate[] criminal conduct of a *continuing* nature"); *Lugo v. State*, 845 So. 2d 74, 99 (Fla. 2003) (explaining Florida RICO plaintiffs must establish "that a continuity of particular criminal activity exists").  There are two types of continuity that may establish a RICO claim:  closed-ended continuity and open-ended continuity.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).  Closed-ended continuity refers to "a closed period of repeated conduct."  *Id.*  Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition."  *Id.*

Appellants cannot establish either form of continuity.  They cannot show closed-ended continuity because there is only one victim, LTC, and "only a single scheme with a discrete goal" connecting the predicate acts—*i.e.*, Appellees' alleged scheme to divert business proceeds from LTC to LWW and themselves. *See Jackson*, 372 F.3d at 1267 ("[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time."); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (affirming dismissal of RICO claim when a "closed-ended series of predicate acts . . . constituted a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities" (quotations omitted)).

Nor can they show open-ended continuity because there is no threat of continuing criminal activity. *See Jackson*, 372 F.3d at 1265 ("In 'open-ended' cases that rely on alleging the *threat* of continuity, plaintiffs can meet their burden by establishing either that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." (quotations omitted)). We agree with the district court "[t]here is no threat that [Appellees'] alleged pattern of racketeering activity will continue into the future because their goal has been realized in the acquiring of the QU Project, and there is no longer a working relationship between the two companies giving rise to the opportunity for Defendants' pattern of predicate acts to persist into the future." *See also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994) ("In assessing whether a threat of continued racketeering activity exists, we have made clear that schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity.").

Accordingly, the district court did not err in granting summary judgment to Appellees on the federal and Florida RICO counts.

*2. Fraud*

The district court did not err in granting summary judgment to Appellees on Appellants' two fraud-based counts.

*a.  Fraud in the Inducement*

Appellants assert the evidence in this case supports a claim of fraud in the inducement.  As the district court found, however, Appellants failed to argue a claim for fraud in the inducement in responding to Appellees' summary judgment motion, instead arguing the elements of a conspiracy to defraud.  Because Appellants failed to carry their burden, the district court did not err in granting summary judgment on their claim of fraud in the inducement.  *A & M Stores, Inc. v. Hiram Walker, Inc.*, 427 F.2d 167, 168 (5th Cir. 1970)[4] (affirming summary judgment because "plaintiff failed to meet its burden of responding to defendants' motions for summary judgment by setting forth specific facts showing that there is a genuine issue for trial" (quotations omitted)).

*b.  Common Law Fraud*

With regard to Appellants' claim for common law fraud, we agree with the district court that "[Appellants] advance no specific facts . . . that would establish a claim of common law fraud."  Appellants' broad assertion that "[t]he record in this

---

[4] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

case details the criminal or fraudulent acts committed by each of the Defendants"

is insufficient to create a genuine issue of fact. *See Martin v. Commercial Union*

*Ins. Co.*, 935 F.2d 235, 238 (11th Cir. 1991) ("The party opposing the motion [for

summary judgment] must present specific facts in support of its position and

cannot rest upon allegations or denials in the pleadings."). Accordingly, the

district court did not err in granting summary judgment on the common law fraud

claim.

## 3.  Civil Conspiracy

The district court did not err in granting summary judgment to Appellees on

the civil conspiracy claim. Appellants' brief broadly asserts Appellees agreed to

divert LTC's business opportunities to LWW and to have LTC's incoming revenue

from the QU contracts deposited into LWW's financial account. However, as with

the claim for common law fraud, Appellants have not identified specific facts or

evidence substantiating their allegations. Furthermore, Appellants have not

explained how this conduct, even if true and supported by evidence, satisfies the

elements of a civil conspiracy. In particular, Appellants have not explained how

LWW's cashing of checks constituted an independent wrong or tort. *See Blatt v.*

*Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 951 (Fla. 3d DCA 1984) ("[A]

cause of action for civil conspiracy exists . . . only if the basis for the conspiracy is

an independent wrong or tort which would constitute a cause of action if the wrong

10

were done by one person." (quotations omitted)).  Accordingly, the district court

did not err in granting summary judgment on the civil conspiracy claim.

## 4.  Breach of Fiduciary Duty

The district court did not err in granting partial summary judgment to

Appellees on the breach of fiduciary duty claim.  Specifically, the district court did

not err in concluding "[Appellees] are entitled to summary judgment to the limited

extent that they did not owe any fiduciary duties to LTC beyond their respective

dates of resignation from the company."  *See Gregg v. U.S. Indus., Inc.*, 715 F.2d

1522, 1541 (11th Cir. 1983) ("[O]nce Gregg was removed as president and chief

operating officer of his former companies and made only a consultant he no longer

had fiduciary duties . . . ."); *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 644 (2d

DCA 1958) ("After there has been a severance of official relationship, either

because of resignation or removal, generally a director or officer occupies no

relation to the corporation of trust or confidence and deals with it thereafter like

any other stranger; and he is not precluded from engaging in a competing

business.").  Additionally, the district court did not err in concluding Reigl was

entitled to partial summary judgment "to the limited extent that any breach of

fiduciary duty is asserted against him in relation to the ConnSCU contracts and

checks."  As the district court explained, there is no evidence Reigl was involved

11

in those transactions.  Therefore, the district court did not err in granting partial summary judgment to Appellees on the breach of fiduciary duty claim.

## 5.  *Aiding and Abetting Breach of Fiduciary Duty*

Finally, the district court did not err in granting partial summary judgment to Appellees to the limited extent summary judgment was granted to Appellees on the claim of fiduciary duty discussed above.  *See Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) ("A cause of action for aiding and abetting requires [among other things] an underlying violation on the part of the primary wrongdoer . . . ." (quotations omitted)).

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order granting partial summary judgment on the federal claims and dismissing the remaining state claims.

**AFFIRMED**.